1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9

10   Arizona Life Coalition, Inc., et al.,          )
                                                    )
11                        Plaintiffs,               )        No. CV-03-1691-PHX-PGR
                                                    )
12              vs.                                 )
                                                    )        OPINION and ORDER
13   Stacey Stanton, et al.,                        )
                                                    )
14                        Defendants                )
     _____       )

15

16          Pending before the Court is the Amended Motion for Summary Judgment (doc.

17   #39) brought by plaintiffs Arizona Life Coalition, Inc. and Gary Paisley (collectively

18   "Plaintiffs" or "Life Coalition") and the Cross-Motion for Summary Judgment (doc. #45)

19   brought by Defendants Arizona License Plate Commission and Stacey Stanton

20   (collectively "Defendants").  Having considered the parties' memoranda in light of their

21   Stipulated Facts and the oral argument of their counsel, the Court finds that there are no

22   genuine issues of material fact and that the defendants are entitled to entry of judgment

23   in their favor as a matter of law pursuant to Fed.R.Civ.P. 56.

24   BACKGROUND

25          In January 2002, Life Coalition mailed a request for a special organization license

26   plate to the Arizona Department of Motor Vehicles ("Department").  The January 2002

27   request was lost and Life Coalition resubmitted an application in June 2002.  Life

28   Coalition requested a plate displaying its official logo, characterized by the faces of two

1   children and the motto, "Choose Life."  The Department determined that Life Coalition

2   met the requirements prescribed by A.R.S. § 28-2404(G)(2) and submitted the request

3   to the Arizona License Plate Commission ("Commission").  The purpose of Life Coalition

4   is to provide charitable, educational, and scientific services to persons who are

5   considering abortion.  Life Coalition does not offer specific products or brand names for

6   sale.  The organization does not promote a specific religion, faith, or anti-religious belief.

7

8   On August 28, 2002, the Commission took up consideration of Life Coalition's

9   application.  The Commission discussed whether a "Choose Life" plate would constitute

10  an endorsement by the State of Arizona.  Specifically, the Commission was concerned

11  that other groups, with differing abortion-related viewpoints, would also apply for a

12  license plate.  The Commission tabled the application pending further review.  Life

13  Coalition submitted a revised application to the Department in September 2002.  The

14  application's only substantive difference was the inclusion of the Life Coalition name on

15  the plate design.

16  On August 28, 2003, the Commission met again to consider Life Coalition's

17  application.  Gary Paisley ("Paisley"), the Chairman of Life Coalition, represented Life

18  Coalition before the Commission and was asked a series of questions.  Those

19  questions are as follows:

20      1.  Mr. Paisley was asked to elaborate on how the activities of Life Coalition

21          serve the community and contribute to the welfare of others.  Mr. Paisley

22          responded by mentioning a diaper drive organized by Life Coalition and

23          providing services to those considering abortion, including pregnancy

24          tests, counseling, and relationship advice.

25      2.  Mr. Paisley was asked to provide a list of organizations which are members

26          of Life Coalition.  Mr. Paisley stated that some 40 non-profit organizations

27          were members of Life Coalition.  When asked how many individual

28          members Life Coalition had, Mr. Paisley stated that there were 100,000

1    individual members if one took into account the various organizational

2    memberships.

3        3.  Mr. Paisley was asked whether there were any restrictions on membership.

4    Mr. Paisley stated that Life Coalition had a statement of principles and that

5    members of Life Coalition must agree with the statement of principles and

6    affirm their agreement with the statement through the execution of an

7    application form.

8        Although initially stating during the August 28th meeting that it was not going to

9    take any action on Plaintiffs' application, the Commission later formally voted to deny

10   the application.  In response to Mr. Paisley's questions as to how he could correct the

11   application to resolve any statutory deficiencies in it, the Commission's chairwoman

12   stated that the Commission's denial of the application was final and that there would not

13   be an opportunity for another amended application.

14       Plaintiffs thereafter commenced this action pursuant to 42 U.S.C. § 1983.

15   LEGAL ANALYSIS AND DISCUSSION

16       A. Propriety of Summary Judgment

17       The parties, having provided the Court with a set of Stipulated Facts (doc. #35),

18   have agreed that this matter may be decided as a matter of law based on their cross-

19   motions for summary judgment.

20
21       B.  The First Amendment: Speech, Forum Analysis and Viewpoint
             Discrimination

22       Plaintiffs argue that special organization plates are private speech protected by

23   the First Amendment, and that in denying their petition for a special organization plate,

24   Defendants wielded unbridled discretion by employing vague standards to regulate

25   otherwise protected speech and thereby engaged in viewpoint discrimination.  Plaintiffs

26   request that this Court grant summary judgment in their favor.  Defendants argue,

27   however, that the primary purpose of any license plate is "to identify vehicles and

28   vehicle owners," thereby making speech on license plates government speech, and that

1  the Commission's actions were reasonable in light of the purpose served by this

2  nonpublic forum and are viewpoint neutral.  Defendants therefore ask this Court to deny

3  Plaintiffs' amended motion for summary judgment and grant their cross-motion for

4  summary judgment.

5        The First Amendment question before the Court is whether Defendants engaged

6  in impermissible viewpoint discrimination against the Plaintiffs.  This question, however,

7  depends on whether the relevant message is either government or private speech.

8  *Planned Parenthood of South Carolina, Inc. v. Rose*, 361 F.3d 786, 792 (4th Cir. 2004),

9  *cert. denied*, 125 S.Ct. 1036 (2005).  This inquiry is generally dispositive in viewpoint

10  discrimination cases based on three common assumptions: "first, that all speech is

11  either government speech or private speech; second, that when the government speaks

12  for itself and is not regulating the speech of others, it may discriminate based on

13  viewpoint; and third, that the government may not discriminate based on viewpoint

14  when it regulates private speech."  *Id.*

15        1.      Whether All the Speech is Either Government Speech or Private Speech

16        While the United States Supreme Court and the Ninth Circuit Court of Appeals

17  have not yet addressed the issue on whether speech involving specialty license plates

18  is government or private in nature, the Fourth Circuit Court of Appeals has addressed

19  this particular issue.  In *Sons of Confederate Veterans, Inc. v. Comm'r of Virginia Dep't*

20  *of Motor Vehicles*, 288 F.3d 610 (4th Cir. 2002), the Sons of Confederate Veterans

21  ("SCV") applied for a specialty license plate on behalf of its members.  While the state

22  of Virginia granted an organizational plate to members of the SCV, it refused to allow

23  the SCV to display its emblem on the plate because it included the Confederate Flag.

24  The Fourth Circuit concluded that the restriction, though neutral on its face, was

25  discriminatory because it suppressed the SCV's viewpoint.  *Id.* at 623-626.

26        In deciding whether the affected speech was government or private, the Fourth

27  Circuit applied a four-factor test borrowed from other sister circuits.  The test involves

28  the examination of: "(1) the central purpose of the program in which the speech in

1  question occurs; (2) the degree of editorial control exercised by the government or

2  private entities over the content of the speech; (3) the identity of the literal speaker; and

3  (4) whether the government or the private entity bears the ultimate responsibility for the

4  content of the speech[.]" *SCV*, 288 F.3d at 618 (internal quotation marks omitted); *see*

5  *Wells v. City and County of Denver*, 257 F.3d 1132, 1141 (10th Cir.), *cert. denied*, 534

6  U.S. 997 (2001); *Knights of the Ku Klux Klan v. Curators of the Univ. of Missouri.*, 203

7  F.3d 1085 (8th Cir. 2000), *cert. denied*, 531 U.S. 814 (2000); *see also Downs v. L.A.*

8  *Unified School Dist.*, 228 F.3d 1003 (9th Cir. 2000), *cert. denied*, 532 U.S. 994 (2001).

9         Applying the first factor of this four-factor test, the Court must consider the

10  "purpose" of the special plate program.  The Plaintiffs argue that Arizona requires the

11  guaranteed collection of fees designated for the plate's design and manufacture before

12  the speech can be triggered.  In other words, the program ensures that only special

13  plate messages will appear if the messages are popular among private organizations

14  whose membership is large enough to produce a certain amount of revenue.

15  Defendants argue, however, that "the primary function of Arizona license plates . . . [is]

16  the State's ability to identify a vehicle and a vehicle owner."  There is merit to the

17  Defendants' argument.  The display of license plates has been deemed the best method

18  of government identification, both for the vehicle and for the owner/operator of the

19  vehicle.  *See Kahn v. Dep't of Motor Vehicles*, 16 Cal.App.4th 159, 166 (1993) ("A

20  vehicle license plate is a state-imposed display of registered vehicle identification.  That

21  the state permits license holders, for an additional fee, to vary minimally their vehicle

22  identification from the prescribed form by selecting letter and/or number combinations

23  which may reflect an individual's personal or professional identity, or possibly express a

24  thought or idea, is purely incidental to the primary function of vehicle identification.").

25         The Plaintiffs' argument, however, has merit as well.  Under A.R.S. § 28-

26  2404(G)(2), organizations only qualify for a special organization plate if they certify "to

27  the department that the organization has at least . . . [200] members" or otherwise agree

28  "to pay the production and program costs of the special organization plate as

1   determined by the commission."  Furthermore, A.R.S. § 28-2404(C) requires that

2   qualified organizations "collect and hold applications from its members and the required

3   fees for the special organization plates."  The statute provides that the Department

4   "shall design and issue the requested special plate within one year after receiving the

5   applications and fees if the  ... [D]epartment determines that both of the following apply:

6   (a) The applicants are qualified for the requested special plate.  (b) The monies paid for

7   the plates are available to the state."   A.R.S. § 28-2404(C)(5).   While Arizona's central

8   purpose relating to license plates is the identification of a vehicle and a vehicle's owner,

9   the purpose of the special plate program also appears to be one that "produce[s]

10  revenue while allowing, on special plates authorized for private organizations, . . .  the

11  private expression of various views."  *SCV*, 288 F.3d at 619.  This is evidenced by the

12  Commission's acceptance of such messages as "Conserving Wildlife", Rotary

13  International's "Service Above Self", and Red Means Stop Coalition's "Stop Red Light

14  Running".  While all of these slogans seek to advance a view that may be good for

15  public policy, all of these slogans, subject to a certain fee rate, have some indicia of

16  private expression.

17       The special plate program works, however, "by authorizing a variety of state-

18  approved, if not state-created, messages . . . allowing . . . private person[s] to decide

19  whether to select a plate expressing a particular one."  *SCV*, 288 F.3d at 620.  Arizona

20  determines the efficacy of license plate messages on the basis of standards that avoid

21  otherwise offensive speech, requiring a certain number of members and a certain fee

22  that must be made available to the state for the design and issuance of the plates.  *See*

23  A.R.S. § 28-2404(G)(2); A.R.S. § 28-2404(C).  Thus, the program's purpose, while

24  having some measure of private expression, serves primarily a government function.

25       The second factor the Court must consider is the "degree of editorial control

26  exercised by the government or private entities over the content of the speech."

27  Arizona exercises a substantial amount of editorial control.  The Plaintiffs claim that the

28  Commission issued "instructions for ensuring that the design submitted by the sponsor

1   [would] . . . conform to size and space requirements, but [did] not contain [any]

2   guidelines regarding the substantive content of the [plate] or any indication of reasons,

3   other than failure to comply with size and space restrictions."  *SCV*, 288 F.3d at 621.

4   This argument, however, has little merit.  While the Commission determines "the color

5   and design of license plates and whether to authorize special organization plates

6   pursuant to § 28-2404," the Commission has also set out specific requirements

7   regarding the organization's substantive purposes as evidenced in A.R.S. § 28-2404(B).

8   *See* A.R.S. 28-2405(D).

9          Under A.R.S. § 28-2404(B),

10         [t]he commission shall authorize a special organization plate if the organization
           meets the following requirements:
11         1. The primary activity or interest of the organization serves the community,
           contributes to the welfare of others and is not offensive or discriminatory in
12         its purpose, nature, activity or name.
           2. The name of the organization or any party of the organization's purpose does
13         not promote any specific product or brand name that is provided for sale.
           3. The purpose of the organization does not promote a specific religion,
14         faith, or antireligious belief.

15         All of these statutory guidelines represent a level of editorial control over the

16  substantive nature of special organization plates, and they allow for broad discretionary

17  power exercised by the Commission.

18         The Plaintiffs argue, however, that guidelines are restricted to general matters of

19  design and do not address the substantive content of the plates in the required forms.

20  While this argument comports with the reasoning in *SCV*, this is not the case here.  The

21  forms ask for general information such as name, address, and purpose of the

22  organization.  The forms also provide a template for a "[d]rawing or sample of the

23  logo/indicia and organization name or slogan that . . . [the organization] wish[es] to

24  appear on the plate."  Although such guidelines do not specifically address or use terms

25  relating to the license plates, the statute most certainly relates to the substantive

26  content of the plates since the statute discusses, in detail, the appropriate substantive

27  purposes of the organizations themselves.  Obviously, to hold otherwise would strip

28  away any meaning to the phrase "special organization plate."  Only special

1   organizations will be allowed to display their messages on license plates if they meet

2   the required substantive purposes as laid out in A.R.S. § 28-2404(B).  Thus, Arizona

3   exercises enough substantive control that makes the speech government speech rather

4   than private speech.

5           Finally, the Court must determine the identity of the "literal speaker" and whether

6   the government or private entity bears the ultimate responsibility for the content of the

7   speech.  The "literal speaker" may be the license plate itself, which would not implicate

8   government or private speech directly.  *See SCV*, 288 F.3d at 621.  Arizona has an

9   interest in identifying vehicles and vehicle owners.  Special organizations, for a fee, can

10  advance positions through messages on their license plates.  The parties dispute who

11  owns Arizona license plates.  While Plaintiffs cite to A.R.S. § 28-2356 (transfer of

12  license plates to another vehicle) and § 28-2403 (transfers of special plates) as proof

13  that drivers, not Arizona, own their license plates, Defendants argue that since license

14  plates are a state's best method "to identify a vehicle and a vehicle owner," an

15  automobile license plate is and remains a state communication for a state purpose.

16          Under A.R.S. § 28-2351(A), "[t]he department shall provide to every owner one

17  license plate for each vehicle registered."  The license plate commission determines

18  "the color and design of the license plate."  A.R.S. § 28-2351(C).  On termination of the

19  use of the license plate, "the director may *require* return to the department of the plate

20  issued by the department."  A.R.S. § 28-2352 (emphasis added).  Clearly, Arizona is the

21  owner of state-created, state-issued license plates.  While one may transfer license

22  plates to a new car or replace a standard license plate with a special plate, Arizona's

23  ownership remains the same.

24          The special organization plates, however, "are mounted on vehicles owned by

25  private persons."  *SCV*, 288 F.3d at 621.  The United States Supreme Court has

26  indicated that license plates, even when owned by the government, implicate some

27  private speech because of the connection of any message on the plate to the driver or

28  owner of a vehicle.  *See Wooley v. Maynard*, 430 U.S. 705, 717 (1977) (Supreme Court

- 8 -

1  found that New Hampshire violated the First Amendment when the state required

2  objecting drivers to display the state motto "Live Free or Die" on their license plate).

3  Defendants' argument is more persuasive due to the nonpublic nature of license plates

4  and the Arizona's imposition of limits on access to that forum.  Pursuant to Arizona

5  statute, the statutory scheme sets forth various requirements that organizations must

6  meet in order to have a special organization plate.  Organizations must be a certain size

7  and the Commission makes determinations as to the substantive purposes, and

8  ultimately, the substantive content of the plates.  *See* A.R.S. § 28-2404(G)(2); A.R.S. §

9  2402(B).  In the end, Arizona bears the ultimate responsibility for the speech in this

10  case.  Thus, while the "literal speaker", *i.e.* the license plate, implicates both

11  government and private speech, the ultimate responsibility remains with Arizona, which

12  controls the type of organization allowed and the substance that the organization tries to

13  promote.

14
      2.      Whether License Plates Constitute a Designated Public Forum or
              Nonpublic Forum
15

16          Plaintiffs further argue that special organization plates are a designated public

17  forum because they serve as channels of communication designated by the Arizona

18  legislature for use by certain speakers, or for the discussion of certain subjects.

19  Defendants claim, however, that "[i]t is unreasonable to assume that Arizona license

20  plates, which have served a purely governmental function and which have been a

21  nonpublic forum, have automatically become a public forum because of legislation

22  granting organizations the opportunity to apply for a special organization plate."  In order

23  to determine whether a state has unconstitutionally excluded a private speaker from a

24  public forum, the Court must first decide on the nature of the forum.  *See Perry Ed.*

25  *Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44 (1983).  The United States

26  Supreme Court has identified three types of property: the traditional public forum, the

27  public forum created by government designation, and the nonpublic forum.  *Cornelius v.*

28  *NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985).

1    Traditional public fora are places devoted to assembly and public debate, such

2  as public streets and parks.  *Perry*, 460 U.S. at 45.  The facts in this case, however, do

3  not indicate a traditional public forum.  License plates, both historically and presently, do

4  not serve as forums that one would associate with assembly or public debate.  Thus,

5  the strict scrutiny analysis does not apply.  The discussion must turn on whether license

6  plates are public forums by government designation or nonpublic forums.

7    A public forum may be designated by the government for assembly and speech,

8  for use by particular speakers, or for the discussion of particular topics.  *Cornelius*, 473

9  U.S. at 802.  Speakers in designated public fora "can be excluded . . . only when the

10  exclusion is necessary to serve a compelling state interest and . . . is narrowly drawn to

11  achieve that interest."  *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 965 (9th

12  Cir. 2002).  Courts often must look "to the policy and practice of the government, the

13  nature of the property and its compatibility with expressive activity, and whether the

14  forum was designed and dedicated to expressive activities . . . ."  *Children of the Rosary*

15  *v. City of Phoenix*, 154 F.3d 972, 976 (9th Cir. 1998).  Government exclusion of a

16  speaker who falls within a class to which a designated public forum is generally

17  available is subject to critical review.  *United States v. Kokinda*, 497 U.S. 720, 726-727

18  (1990).  Other government property constitutes either a nonpublic fora or no fora at all.

19  *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998).

20    The First Amendment does not guarantee access to property simply because it is

21  owned by the government.  *United States Postal Serv. v. Council of Greenburgh Civic*

22  *Ass'n*, 453 U.S. 114, 129 (1981); *accord United States v. Grace*, 461 U.S. 171, 177

23  (1983) ("The government, no less than a private owner of property, has the power to

24  preserve the property under its control for the use to which it is lawfully dedicated.").

25  The case law indicates a distinction between *general access*, or public forums

26  designated by the government, and *selective access*, or nonpublic forums.  *Forbes*, 523

27  U.S. at 679.  On the one hand, the government creates a designated public forum when

28  it makes its property available to a certain class of speakers.  *Id.*  The government,

1   however, must do so intentionally, permitting limited discourse in an otherwise

2   nontraditional forum. *Cornelius*, 473 U.S. at 802. The Supreme Court has said

3   consistently that it will not find a public forum if evidence exists of a contrary intent, nor

4   will the Supreme Court infer government intent to create a public forum when the nature

5   of the property is inconsistent with the expressive activity. *Id.* at 803.

6         On the other hand, the government does not create a public forum by

7   designation "when it does no more than reserve eligibility for access to . . . [a] forum

8   [for] . . . a particular class of speakers, whose members must then, as individuals,

9   'obtain permission.'" *Forbes*, 523 U.S. at 679. Control over access to a nonpublic

10  forum can be based on subject matter and speaker identity if such distinctions are

11  reasonable and viewpoint neutral. *Cornelius*, 473 U.S. at 806. A person may be

12  excluded from a nonpublic forum if the topic he seeks to address falls outside the

13  purpose of the forum or if he is not a member of the class of speakers for whom the

14  forum has been created. *Id.* The government violates the First Amendment by denying

15  access to a speaker for the sole purpose of espousing a point of view on an otherwise

16  includible subject. *Id.*

17        Restricting access to a nonpublic forum, however, need only be reasonable; it

18  need not be the most reasonable or only reasonable limitation. *Id.* at 808. The First

19  Amendment does not require that a speaker be given unrestricted access to a nonpublic

20  forum if the forum's use merely serves as the speaker's most efficient means of

21  delivering his message. *Id.* at 809. Thus, "a finding of strict incompatibility between the

22  nature of the speech or the identity of the speaker and the functioning of the nonpublic

23  forum is not mandated" by the First Amendment. *Id.* at 808.

24        A special organization plate in Arizona is a nonpublic forum. First, a special

25  organization plate is a limited type of license plate that must meet various requirements

26  to obtain permission from the State as to certain kinds of discourse. Second, access is

27  selective as opposed to general. Organizations must be at least 200 people. They

28  must serve the community in a nondiscriminatory fashion that neither promotes a

1  specific brand or product or specific religion, faith, or antireligious belief.  Third, Arizona

2  did not intend to open special organization plates to every organization imaginable.

3  While Arizona intentionally passed laws to allow some discourse on certain types of

4  license plates, it did so for organizations with at least 200 members and who had met

5  specific requirements.  That is why the license plate is designated as a "special"

6  organization plate.

7          3.   Whether the Defendants Engaged in Impermissible Viewpoint Discrimination

8          Plaintiffs argue that Defendants' decision not to grant the Plaintiffs' application for

9  a special organization plate was both unreasonable in light of the purpose served by the

10 forum and constituted viewpoint discrimination.  A nonpublic forum is subject to the tests

11 of reasonableness and viewpoint neutrality.  *Cornelius*, 473 U.S. at 803.  The

12 reasonableness analysis "focuses on whether the limitation is consistent with preserving

13 the property for the purpose to which it is dedicated."  *Brown v. Calif. Dep't of Transp.*,

14 321 F.3d 1217, 1222 (9th Cir. 2003) (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd.*

15 *of Educ.*, 196 F.3d 958, 967 (9th Cir. 1999)).  Viewpoint discrimination "is a form of

16 content discrimination in which 'the government targets not subject matter, but particular

17 views taken by speakers on a subject.'"  *Children of the Rosary*, 154 F.3d at 980

18 (quoting *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829

19 (1995)).  The test therefore is whether state control over this apparently nonpublic forum

20 is "reasonable in light of purpose served by the forum" and is "viewpoint neutral."

21         As to reasonableness, this Court has already recognized Defendants' claim that

22 license plates are Arizona's best method for identifying a vehicle and a vehicle owner.

23 *See Kahn*, 16 Cal.App.4th at 166.  Second, Defendants argue that "[t]he Commission's

24 action in denying Plaintiffs' plate application, which resulted in keeping the State of

25 Arizona viewpoint neutral in the Choose Life/Pro-Choice debate, was reasonable."  This

26 view is supported by case law.  The United States Supreme Court and the Ninth Circuit

27 Court of Appeals have found that the exclusion of partisan groups in a non-partisan

28 arena prevents a state from granting "one side of a debatable public question . . . a

1   monopoly in expressing its views . . . ."  *City of Madison, Joint School Dist. No. 8 v.*

2   *Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175 (1976); *see Monterey*

3   *County Democratic Cent. Comm. v. United States Postal Serv.*, 812 F.2d 1194, 1198-

4   1199 (9th Cir. 1987).  "[A]voiding the appearance of political favoritism is a valid

5   justification for limiting speech in a nonpublic forum."  *Cornelius*, 473 U.S. at 811.

6          While special plate messages may have some indicia of private expression,

7   Defendants conclude rightly that it has kept Arizona from entering the politically

8   sensitive arena of abortion politics.  Granting one side of a political debate the exclusive

9   use of a license plate that is manufactured and issued by Arizona for vehicle

10   identification purposes would pollute the overall purpose of the forum.  Thus, Arizona

11   has set forth a scheme that is reasonable in light of the forum's overall purpose.

12          Plaintiffs argue, however, that Defendants engaged in viewpoint discrimination

13   because the Commission (1) granted the plate requests of 11 different organizations

14   and (2) refused to say why it denied Life Coalition's application.  Generally, "a nonpublic

15   forum by definition is not dedicated to general debate or the free exchange of ideas.

16   The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who

17   would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose."

18   *Cornelius*, 473 U.S. at 811.  First, there is nothing in the record to suggest that the

19   Commission favored one view over another.  The Commission, for all intents and

20   purposes, has steered clear of the abortion debate.  It has neither granted a monopoly

21   nor shown political favoritism to either side of this "debatable public question."

22          Second, while 11 other requests for a special plate contained a private speech

23   component, most of the messages are non-partisan in nature or messages that the

24   public accepts generally.  The "Fraternal Order of Police," "Professional Fire Fighters,"

25   "Legion of Valor," "Stop Running Red Lights," "Conserving Wildlife," and "Service Above

26   Self" are all slogans that cut across political lines and reinforce important public

27   institutions and policies that seek to better mankind without the imposition of political

28   gamesmanship.  Furthermore, "[n]one of the 11 organizations whose plate requests

1    were granted had anything to do with the subject matter of Plaintiffs' desired speech or

2    any opposing view."  The Commission has remained neutral on the issue and continues

3    to remain neutral on the issue.  Thus, the Commission did not engage in viewpoint

4    discrimination.

5           C.      Unbridled Discretion

6           The Plaintiffs argue that "Arizona's statutory scheme for special organization

7    plates is unconstitutional on its face because it allows the Commission unbridled

8    discretion to restrict private speech."  It is unconstitutional "to enable a public official to

9    determine which expressions of view will be permitted and which will not" under a

10   scheme of broad discretionary power.  *Cox v. State of Louisiana.*, 379 U.S. 536, 557

11   (1965).  Such limits should provide "'narrowly drawn, reasonable and definite standards'

12   that are 'reasonably specific and objective, and do not leave the decision 'to the whim of

13   the administrator.'"  *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333

14   F.3d 1092, 1107-1108 (9th Cir. 2003), *cert. denied*, 540 U.S. 1110 (2004) (quoting

15   *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992)).  Without such

16   clarity, government regulation of speech would create "an impermissible risk of

17   suppression of ideas."  *Nationalist Movement*, 505 U.S. at 129.

18          While it is clearly unconstitutional "to grant an official unfettered discretion" as to

19   the permissibility of expression for particular views, Plaintiffs' alarmist tone is unjustified.

20   There is nothing in the record to suggest that the Commission has engaged in the

21   "sporadic abuse of power" in denying Life Coalition's application.  *Id.* at 133.  The

22   Commission was merely following the statutory guidelines laid down by the Arizona

23   Legislature pursuant to A.R.S. § 2404(B).

24          D.      Equal Protection

25          Plaintiffs also argue that the Commission violated the Equal Protection Clause of

26   the United States Constitution.  The Supreme Court has stated that "the Equal

27   Protection Clause, not to mention the First Amendment itself . . . may not grant the use

28   of a forum to people whose views, it finds acceptable, but deny use to those wishing to

1  express less favored or more controversial views . . . . There is an equality of status in

2  the field of ideas, and government must afford all points of view an equal opportunity to

3  be heard." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972).  However,

4  "[w]hile distinctions between classes of speech may unconstitutionally burden equal

5  protection rights, the viability of equal protection claims relating to expressive conduct is

6  contingent upon the existence of a public forum." *Monterey County Democratic Cent.*

7  *Comm.*, 812 F.2d at 1199-1200 (citing *Perry*, 460 U.S. at 55).  "Only when rights of

8  access associated with a public forum are improperly limited may [the Court] . . .

9  conclude that a fundamental right is impinged." *Id.* at 1200.  The Plaintiffs, therefore,

10  "can lay no claim to a fundamental right of access here because the applicable forum is

11  nonpublic." *Id.*

12       In such situations, government regulations of government property relating to

13  speech are upheld if they "rationally further a legitimate state purpose." *Id.* (citing *Perry*,

14  460 U.S. at 54).  Arizona's purpose seeks to avoid the partisan world of abortion politics

15  and to uphold a license plate's overall purpose of vehicle identification.  The

16  Commission has not endorsed either side of the debate nor has the Commission

17  granted use of the forum to one side or the other.  The status of the Choose Life/Pro-

18  Choice debate remains the same.  Thus, Plaintiffs' equal protection claim must fail.

19       E.    Remedies

20       Finally, Plaintiffs argue that A.R.S. § 28-2404 is unconstitutionally vague,

21  permitting Arizona to exercise otherwise unbridled discretion in the decision-making

22  process for special organization plates.  Plaintiffs therefore request that the Court

23  construe the statute to be constitutional by striking the first clause, and defining the

24  words "offensive" and "discriminatory."  As support for their argument, Plaintiffs cite to

25  *Lewis v. Wilson*, 253 F.3d 1077 (8th Cir. 2001).  In *Lewis*, the Eighth Circuit struck down

26  a Missouri statute prohibiting the issuance of vanity plates that were "contrary to public

27  policy." *Id.* at 1081.  The phrase "contrary to public policy" was found to be "so

28

1   nebulous and malleable [that it could mean] anything presently politically expedient." *Id.*

2

3   The Court declines to do as Plaintiffs request.  The statute at issue in this case

4   does not pose the same "pervasive threat inherent in its very existence." *Nationalist*

5   *Movement*, 505 U.S. at 133.  This Court is unwilling to rewrite any statute duly passed

6   by the Arizona legislature without any evidence of a contrary legislative intent.  In

7   addition, Plaintiffs' constitutional rights were not violated by the Commission's failure to

8   issue a special organization plate that would otherwise support an as-applied challenge

9   to A.R.S. § 2404.  An as-applied challenge is where the law is unconstitutional as

10  applied to a party's speech activity, even though the law is capable of valid application

11  to others.  *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466

12  U.S. 789, 803 n.22 (1984).  As the Court's previous analysis has shown, no

13  constitutional violation took place that would require this Court to rule § 28-2404

14  unconstitutional as applied to Plaintiffs.

15          F.      Conclusion

16  Plaintiffs' suit fails to show that the constitutional rights of Life Coalition were

17  violated as a result of the Commission's action denying Life Coalition's application for a

18  special organization plate.  Due to the necessity of vehicle identification by state

19  authorities, speech on state-approved, state-issued license plates is governmental in

20  nature and constitutes a nonpublic forum from which access is selective rather than

21  general.  Defendants' action was reasonable in light of the purpose served by license

22  plates, that is, the identification of a vehicle and its owner.

23  Furthermore, Defendants' action did not result in viewpoint discrimination.  The

24  Commission sought to avoid the appearance political favoritism in an otherwise

25  nonpublic forum and maintained state neutrality on the issue, giving neither side a leg

26  up in this hotly debated public question.  On that basis, Plaintiffs' claims that the

27  Commission engaged in the use of unbridled discretion and abuse of power, as well as

28  the Commission's alleged equal protection violations, must all fail.  Since no

1 | constitutional violation exists, this Court cannot find A.R.S. § 28-2404 unconstitutional

2 | without proof of a contrary legislative intent.   Therefore,

3 |      IT IS ORDERED that Plaintiffs' Amended Motion for Summary Judgment (doc.

4 | #39) is denied.

5 |      IT IS FURTHER ORDERED that Defendants' Cross Motion for Summary

6 | Judgment (doc. #45) is granted.  The Clerk of the Court shall enter judgment for the

7 | defendants accordingly.

8 |      Dated this 26th day of September, 2005.

Paul G. Rosenblatt
United States District Judge